# Exhibit A

**REED SMITH LLP**
Mark W. Fidanza, Esquire (ID #320930)
Christina G. Bowen, Esquire (ID #331905)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-7301
(215) 851-8100
Fax: (215) 851-1420

*Counsel for Plaintiff John McCready*

This is **NOT** an arbitration case.

*Filed and Attested by the*
*Office of Judicial Records*
*12 JUN 2023 10:55 am*
**JURY TRIAL**
**DEMANDED**
*G. IMPERATO*

| | | |
|---|---|---|
| JOHN MCCREADY<br>70 Mill Street<br>Medford, NJ 08055, | : <br> : <br> : <br> : | COURT OF COMMON PLEAS<br>PHILADELPHIA COUNTY<br>CIVIL DIVISION |
| Plaintiff, | : <br> : | |
| v. | : <br> : | |
| UNITY SOBER LIVING HOMES, LLC<br>448 Walnut Street<br>Pottstown, PA 19464 | : <br> : <br> : <br> : | _____ TERM, 2021<br>CASE NO.: _____ |
| and | : <br> : | |
| VALLEY FORGE MEDICAL CENTER<br>AND HOSPITAL<br>1033 W. Germantown Pike<br>Norristown, PA 19403 | : <br> : <br> : <br> : <br> : | |
| and | : <br> : | |
| CHAMINDA R. JAYAWARDENA<br>241 W. Wyoming Ave<br>Philadelphia, PA 19139 | : <br> : <br> : <br> : | |
| and | : <br> : | |
| RE/MAX ACHIEVERS<br>1425 S. Collegeville Road<br>Collegeville, PA 19426, | : <br> : <br> : <br> : | |
| Defendants. | : <br> : | |

## NOTICE TO DEFEND

### NOTICE

You have been sued in court. If you wish to defend against the claims set forth in the following pages, you must take action within twenty (20) days after this complaint and notice are served, by entering a written appearance personally or by attorney and filing in writing with the court your defenses or objections to the claims set forth against you. You are warned that if you fail to do so the case may proceed without you and a judgment may be entered against you by the court without further notice for any money claimed in the complaint of for any other claim or relief requested by the plaintiff. You may lose money or property or other rights important to you.

*You should take this paper to your lawyer at once. If you do not have a lawyer or cannot afford one, go to or telephone the office set forth below to find out where you can get legal help.*

**Philadelphia Bar Association**
**Lawyer Referral**
**and Information Service**
**One Reading Center**
**Philadelphia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

### AVISO

Le han demandado a usted en la corte. Si usted quiere defenderse de estas demandas expuestas en las paginas siguientes, usted tiene veinte (20) dias de plazo al partir de la fecha de la demanda y la notificacion. Hace falta ascentar una comparencia escrita o en persona o con un abogado y entregar a la corte en forma escrita sus defensas o sus objeciones a las demandas en contra de su persona. Sea avisado que si usted no se defiende, la corte tomara medidas y puede continuar la demanda en contra suya sin previo aviso o notificacion. Ademas, la corte puede decidir a favor del demandante y requiere que usted cumpla con todas las provisiones de esta demanda. Usted puede perder dinero o sus propiedades u otros derechos importantes para usted.

*Lleve esta demanda a un abogado inmediatamente. Si no tiene abogado o si no tiene el dinero suficiente de pagar tal servicio. Vaya en persona o llame por telefono a la oficina cuya direccion se encuentra escrita abajo para averiguar donde se puede conseguir asistencia legal.*

**Asociacion De Licenciados**
**De Filadelfia**
**Servicio De Referencia E**
**Informacion Legal**
**One Reading Center**
**Filadelfia, Pennsylvania 19107**
**(215) 238-6333**
**TTY (215) 451-6197**

**REED SMITH LLP**

*/s/Mark W. Fidanza*
Mark W. Fidanza, Esquire (320930)
Christina Bowen, Esquire (331905)
Three Logan Square, Suite 3100

Case ID: 230601052

1717 Arch Street
Philadelphia, PA 19103-7301
(215) 851-8100
Fax: (215) 851-1420

*Counsel for Plaintiff John McCready*

Dated: June 12, 2023

Case ID: 230601052

**REED SMITH H LLP**
Mark W. Fidanza, Esquire (ID #320930)
Christina G. Bowen (ID #331905)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-7301
(215) 851-8100
Fax: (215) 851-1420

*Counsel for Plaintiff John McCready*

This is **NOT** an arbitration case.

**JURY TRIAL**
**DEMANDED**

| | |
|---|---|
| JOHN MCCREADY<br>70 Mill Street<br>Medford, NJ 08055, | : |
| Plaintiff, | :<br>:<br>: |
| v. | :<br>: |
| UNITY SOBER LIVING HOMES, LLC<br>448 Walnut Street<br>Pottstown, PA 19464 | :<br>:<br>: |
| and | :<br>: |
| VALLEY FORGE MEDICAL CENTER<br>AND HOSPITAL<br>1033 W. Germantown Pike<br>Norristown, PA 19403 | :<br>:<br>:<br>: |
| and | :<br>: |
| CHAMINDA R. JAYAWARDENA<br>241 W. Wyoming Ave<br>Philadelphia, PA 19139 | :<br>:<br>: |
| and | :<br>: |
| RE/MAX ACHIEVERS<br>1425 S. Collegeville Road<br>Collegeville, PA 19426, | :<br>:<br>: |
| Defendants. | : |

COURT OF COMMON PLEAS
PHILADELPHIA COUNTY
CIVIL DIVISION

_____ TERM, 2023
CASE NO.: _____

## VERIFIED COMPLAINT

Plaintiff John McCready ("Plaintiff") by and through his attorneys, Reed Smith LLP, files this Verified Complaint against Defendants Unity Sober Living Homes, LLC ("Unity"), Valley Forge Medical Center and Hospital ("Valley Forge"), Chaminda R. Jayawardena ("Jayawardena"), and Re/Max Achievers ("Re/Max" and together with Unity, Valley Forge, and Jayawardena, "Defendants"), and in support thereof avers as follows:

## NATURE OF THE ACTION

1.      In July 2022, after successfully completing a one-month inpatient course of rehabilitation at Valley Forge, Plaintiff was sent by Valley Forge to Unity, a so-called "Sober Home," in Pottstown, Pennsylvania, to commence his transition back to society.  On the day of Plaintiff's arrival at Unity, which, at the time was an unlicensed Sober Home, and which has never been a hospital, licensed medical provider, or pharmacy, Unity confiscated Plaintiff's prescription medications, subsequently mis-dosed and improperly administered that medication to Plaintiff, causing Plaintiff to suffer a near-fatal state of hypotension (low blood pressure).  Plaintiff ultimately recovered, only to have Unity deem his "overdose" to be a violation of Unity's drug use policies.  As the emergency room records reflect, Plaintiff had not used illicit drugs, but instead had only been following the instructions of Unity and its staff, which caused the overdose.

2.      Plaintiff paid to live at the Sober Home for the next several weeks, during which time he was subjected to repeated harassment by employees who selectively enforced purported Unity "policies."  Unity also provided a home that was filthy and unsafe.  Ultimately, on about September 18, 2022, Plaintiff was unceremoniously kicked out of the Sober Home by Unity, without prior notice and in the middle of the night, purportedly for repeatedly violating Unity's policies. Unity had attempted to hurriedly force Plaintiff to sign papers, likely a release of liability,

2

but Plaintiff refused.  Plaintiff was not permitted to take all of his possessions, and was not issued a refund of the rent he had prepaid through October.  Instead, he was given a plastic shopping bag containing a small portion of his belongings and left to wander the streets of Pottstown in the middle of the night, without any available public transportation.

3.      Plaintiff, struggled to find alternative housing and was forced to live with family in New Jersey for several months, which put strain on his family relationships.  The distress caused by this entire situation further caused Plaintiff to need residential mental health treatment.

4.      Viewed as a whole, Defendants engaged in a course of conduct through which they have intentionally, fraudulently, recklessly, and/or negligently engaged in outrageous conduct to take advantage of, physically and emotionally harm, and extract unlawful payments from Plaintiff.

5.      Plaintiff now brings suit to recover damages for among other things, physical harms, pain, suffering, and extreme emotional distress, as well as past rent paid, out-of-pocket expenses, statutory damages, actual damages, enhanced damages, consequential damages, punitive damages, attorney's fees, fees and costs.

## THE PARTIES

6.      Plaintiff John McCready ("Plaintiff") is a natural person currently residing at a residential treatment facility in Princeton, New Jersey, and having a last known residential address of 70 Mill Street, Medford, NJ 08055.

7.      Defendant Unity Sober Living Homes, LLC ("Unity") is a limited liability company registered under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 448 Walnut Street, Pottstown PA 19464.

8.      Defendant Valley Forge Medical Center and Hospital ("Valley Forge") is the trade/fictitious name of a business organization registered and doing business under the laws of

3

Pennsylvania, with its principal place of business located at 1033 W. Germantown Pike, Norristown, PA 19403.

9.      Defendant Chaminda R. Jayawardena ("Jayawardena") is a natural person and citizen of Pennsylvania, residing at 241 W. Wyoming Avenue, Philadelphia, PA 19153.

10.      Defendant Re/Max Achievers, Inc. ("Re/Max") is the trade/fictitious name of a corporation registered and doing business under the laws of the Commonwealth of Pennsylvania, with its principal place of business located at 1425 S. Collegeville Road, Collegeville PA, 19426.

## JURISDICTION AND VENUE

11.      This Court has personal jurisdiction over Unity, Valley Forge, Jayawardena, and Re/Max pursuant to 42 Pa. C.S. § 5301(a).

12.      This Court also has personal jurisdiction over Unity, Valley Forge, Jayawardena, and Re/Max (collectively, "Defendants") because each continuously and systematically conducts business in the Commonwealth of Pennsylvania by, among other things, entering into contracts, advertising and/or offering services to the public, and generally availing themselves of the laws and judicial machinery in the Commonwealth of Pennsylvania.

13.      This Court has general subject matter jurisdiction over this dispute pursuant to 42 Pa. C.S. § 931(a).

14.      Venue lies in this county pursuant to Pennsylvania Rule of Civil Procedure 1006 because Jayawardena resides, works, and may properly be served in Philadelphia County. As to the other Defendants, venue in this county is proper pursuant to Pennsylvania Rule of Civil Procedure 1006(c), which permits an "action to enforce a joint or joint and several liability against two or more defendants . . . in any county in which the venue may be laid against any one of the defendants under the general rules." Because joint and several liability is sought against all

4

Defendants, including Jayawardena, venue in Philadelphia is proper. Additionally, venue is proper as to Valley Forge, Unity, and Re/Max because, upon information and belief, each regularly conducts business in the County of Philadelphia.

## FACTUAL BACKGROUND

15.    Plaintiff was admitted to Valley Forge on July 5, 2022 for substance abuse treatment.

16.    Plaintiff signed papers pertaining to his discharge and transfer to Unity on August 2, 2022.

17.    On the morning of August 3, 2022, Valley Forge gave Plaintiff a paper cup of medications containing about 4 pills without informing him which medication he was being given. Plaintiff took those medications as directed.

18.    Valley Forge discharged Plaintiff later in the day on August 3, 2022.

19.    At the time of discharge, Valley Forge gave Plaintiff a paper bag containing Plaintiff's prescription medications and some discharge instructions. Plaintiff was never advised which medications he had been given that morning.

20.    Valley Forge represented to Plaintiff that Unity was a Sober Home capable of fulfilling Plaintiff's needs during his transition back to society.

21.    In fact, Unity is one of several Sober Homes that Valley Forge partners with to place patients upon discharge. Valley Forge even hosts recovery events wherein its partners, including Unity, advertise their services.

22.    Valley Forge recommended that Plaintiff go to Unity and arranged for Plaintiff's transition to Unity, including by directly contacting Unity on Plaintiff's behalf to organize the transition.

Case ID: 230601052

23.     Before departing Valley Forge, a Valley Forge employee gave Plaintiff the first dose of his twice-daily blood pressure medication.

24.     A Valley Forge employee then transported Plaintiff in a Valley Forge vehicle to Unity's facility at 236 N. Evans Street, Pottstown, Pennsylvania (the "Property").

25.     Unity does not own the Property.

26.     Jayawardena owns the Property, subject to a mortgage executed by Jayawardena in favor of Santander Bank.

27.     According to the Borough of Pottstown Residential Rentals License ("License"), printed on October 3, 2022, Jayawardena is the owner of the Property and the Property has 1 unit.

28.     A true and correct copy of the License is attached hereto as **Exhibit A**.

29.     Pursuant to the Borough of Pottstown Municipal Code ("PMC"), a Residential Rental License is issued "to the owner, operator, responsible agent or manager of a residential rental unit." PMC § 11-202.

30.     The Property, its owners, operators, responsible agents, and managers are subject to the provisions of Chapter 11 of the PMC, which establishes registration, licensing, and conduct/safety standards for residential rentals in Pottstown. *See* PMC § 11-101, *et seq.*

31.     The Property is not an exempt property under PMC § 11-204.

32.     According to a Residential Tenant Listing and Rental Application submitted to the Borough of Pottstown on or around April 29, 2022 ("2022 Application"), the "Property Manager/Agent" of the Property, is Billy-Jo Salkowski, an agent of Re/Max.

33.     A true and correct copy of the 2022 Application is attached hereto as **Exhibit B**.

34.     The Application also identifies nine (9) individuals as tenants at 236 N. Evans Street, none of which is Unity.

Case ID: 230601052

35.     Billy-Jo Salkowski, as an agent of Re/Max, has been the "Property Manager/Agent" of the Property since at least October 21, 2021.

36.     As "Property Manager/Agent" for the Property, ReMax was an Agent "designated by the owner who has charge, care or control of [the Property]" pursuant to the Pottstown Municipal Code § 11-202.

37.     As a business operating at the Property and holding itself out as a Sober Home allowing residents to reside at the Property pursuant to its policies and procedures, Unity was an Agent "designated by the owner who has charge, care or control of [the Property]" pursuant to the Pottstown Municipal Code § 11-202.

38.     Unity and Re/Max were at all relevant times agents of Jayawardena and acting within the course and scope of their duties and responsibilities on behalf of Jayawardena.

39.     Although not the owner or landlord of the Property, Unity charged "rent" to Plaintiff and collected a "security deposit" as a condition of Plaintiff's intake.

40.     Unity received a Certificate of Licensure from the Pennsylvania Department of Drug and Alcohol Programs ("Department"), a true and correct copy of which is attached hereto as **Exhibit C** ("CoL").

41.     According to the CoL, Unity was licensed for a "Recovery House (9)" effective September 20, 2022.

42.     Unity was not licensed by the Department at any time prior to September 20, 2022.

43.     Unity has never been licensed as a medical services provider, hospital, or pharmacy.

44.     Unity has never employed any licensed medical doctors or licensed pharmacists.

45.     Unity represents itself in its Orientation Handbook as a recovery house designed to help individuals during their journey of recovery in "a safe and structured environment."

7

46.     A true and correct copy of the Orientation Handbook is attached hereto as **Exhibit D**.

47.     Unity purports to have a Medication Control and Self Administration Policy ("Medication Policy"), but that Medication Policy does not establish procedures for the handling of prescription medications other than those for Medication Assisted Treatment ("MAT").

48.     Upon arrival at the Property on August 3, 2022, Plaintiff was required to sign intake forms, immediately after which a Unity employee confiscated Plaintiff's prescription medications, which were prescribed for blood pressure regulation and other conditions, not MAT.

49.     The Unity employee then handed Plaintiff pills, which were not in a container of any kind, and told Plaintiff to take one dose immediately and one dose later that night.

50.     The Unity employee who took Plaintiff's medication and improperly dispensed and administered the medication to Plaintiff was not only not a licensed medical professional or pharmacist, but was himself a recovering drug addict.

51.     During the intake process, Unity informed Plaintiff that any resident receiving SSDI benefits would need to pay rent up front and in advance.

52.     Because Plaintiff received SSDI benefits, Unity demanded that Plaintiff pay to Unity a $75 "security deposit" and weekly "rent" for $185 per week for the next five weeks, totaling $1,000.  Plaintiff paid that amount to Unity.

53.     Later that evening, Plaintiff took the second dose as directed by Unity.

54.     As a result, Plaintiff's blood pressure dropped to near-fatally low levels, causing him to collapse and lose consciousness.

55.     Plaintiff was taken to Pottstown Hospital – Tower Health in Pottstown, Pennsylvania ("Pottstown Hospital") by ambulance.

8

56.     At the emergency department at Pottstown Hospital, Plaintiff was diagnosed with drug-induced hypotension due to medication error, was treated, and observed until the next day.

57.     Pottstown Hospital discharged Plaintiff the following day, August 4, 2022, and Plaintiff walked back to the Property.

58.     The incident giving rise to Plaintiff's drug-induced hypotension constitutes a "medication error" and therefore an "Unusual Incident" pursuant to Unity's Unusual Incident Policy.

59.     A true and correct copy of Unity's Unusual Incident Policy is attached hereto as **Exhibit E**.

60.     Unity did not submit an "Unusual Incident" report to the Department or any other regulatory body, as required by law and under the terms of Unity's Unusual Incident Policy.

61.     On or about August 28, 2022, a Unity employee demanded Plaintiff pay for additional "rent" payments for the next five weeks in the amount of $925, notwithstanding that the Orientation Handbook states that rent payments are due weekly, and payable on Fridays.  Plaintiff paid this increased and advanced payment under Unity's improper threat of eviction.

62.     Unity and its employees knew and understood that Plaintiff received SSDI benefits and sought to improperly and unfairly enrich themselves by demanding advanced payments in violation of their own policies and orchestrating a scheme to evict Plaintiff on false pretenses and keep Plaintiff's money.

63.     Plaintiff was repeatedly subjected to improper and harassing conduct by Unity staff, including the "House Manager", who regularly threatened eviction and selectively enforced purported "policies" against Plaintiff but not other residents.

Case ID: 230601052

64.     Those "policies" did not appear in the Orientation Handbook but were nevertheless enforced against Plaintiff.  By way of just one example, Unity refused to acknowledge that Plaintiff's attendance at an AA meeting was an authorized absence from the Sober Home because Plaintiff did not provide a photograph showing his shoes on the floor of the AA meeting room. No such requirement or policy existed, but it was instead created and used to harass Plaintiff and establish a pretext for unlawfully evicting Plaintiff.

65.     On September 3, 2022, Plaintiff returned to Pottstown Hospital emergency department for cellulitis in his foot.  Pottstown Hospital discharged Plaintiff on the same day, September 3, 2022 after treating the condition.

66.     Plaintiff left Unity on September 18, 2022 to visit his son in New Jersey.

67.     Prior to leaving Unity on September 18, 2022, Plaintiff reported he was leaving the facility on a daily log sheet used by Unity.

68.     Upon return from visiting his son, Unity wrongly claimed that Plaintiff had failed to report his whereabouts and attempted to force Plaintiff to sign an acknowledgment that he had previously committed violations at the Sober Home, and was then given a last and final warning. Plaintiff refused to sign such a document because he had never had *any* prior violations.

69.     Upon information and belief, Unity charged Plaintiff with a violation for having "overdosed" on August 3, 2022 and needing to seek medical assistance, notwithstanding that Plaintiff was administered the wrong dose of his lawfully prescribed medication ***by Unity***, nearly leading to Plaintiff's death.

70.     Later in the evening of September 18, 2022, Plaintiff returned to his room at the Property.  An employee of Unity subsequently confronted Plaintiff at or near midnight to advise that Plaintiff had to leave the Property immediately.  Plaintiff was given 10 minutes to leave the

Case ID: 230601052

Property or be arrested, giving Plaintiff only enough time to grab a few personal belongings in a plastic bag that was given to him.

71.     Upon information and belief, Unity's unlawful eviction of Plaintiff was not the first time a SSDI recipient was unceremoniously ejected from the Property.  While Plaintiff resided at Unity, a former Navy Seal, known to Plaintiff only as Rob, was also required to pay advance rent up front because he was a recipient of SSDI.  Rob was also evicted with being given a refund of any kind.

72.     Unity did not arrange for any alternative housing nor did it provide transportation for Plaintiff, but instead left Plaintiff to wander the streets of Pottstown.

73.     Plaintiff ultimately had to resort to staying with family members in New Jersey, which strained his family relationships.

74.     Defendants have not returned any "rent" or "security deposit" to Plaintiff and have not given Plaintiff any reason for refusing to return those funds to Plaintiff.

75.     Subsequently, in or around January 2023, Plaintiff was admitted to Princeton House Behavioral Health in Princeton, New Jersey for 28 days to receive treatment for anxiety, depression, and other significant emotional distress caused by the series of traumatic events imposed caused by Defendants' misconduct.

76.     Plaintiff was forced to seek additional treatment at Princeton House in late May 2023.

77.     As a result of the Defendants' misconduct described above, Plaintiff has suffered physical injuries, pain and suffering, extreme emotional distress, anxiety, depression, loss of sleep, nightmares, and a complete loss of trust and confidence in the so-called "rehabilitative" services, which are necessary for his long-term recovery from addiction.

11

78.     As a further result of Defendant's misconduct, Plaintiff has suffered the deterioration of his family relationships, which are a critical and necessary resource to support Plaintiff in his recovery.

79.     As a further result of Defendants' misconduct as described above, Plaintiff has suffered monetary losses, including rent and security deposits wrongfully withheld, as well as the loss of his physical property, including clothing and other personal items he was not permitted to take with him upon being wrongfully evicted.

## COUNT I
## NEGLIGENCE
### *(Plaintiff v. All Defendants)*

80.     Plaintiff incorporates all allegations in the preceding paragraphs as if set forth and alleged fully herein.

81.     At all relevant times Valley Forge, Unity, Jayawardena, and Re/Max each acted through their respective employees, contractors, and or agents and each is therefore liable for the acts and omissions of their respective employees, contractors, and or agents under theories of *respondeat superior*, vicarious liability, master-servant, agency, and right of control, all of which are expressly invoked herein against Valley Forge, Unity, Jayawardena, and Re/Max.

82.     Valley Forge has partnered with several Sober Homes, including Unity, to place its patients in such Sober Homes after those patients' treatment at Valley Forge concludes.

83.     In or around August 2022, in conjunction with Plaintiff's discharge, Valley Forge recommended, orchestrated and facilitated the placement of Plaintiff at the Property under the care of Unity as part of an aftercare program.

84.     After discharging Plaintiff, Valley Forge transported Plaintiff, in a Valley Forge vehicle, from its facility to Unity at the Property.

12

85.     Valley Forge owed a duty to Plaintiff to exercise the care of a reasonably prudent business in the same or similar circumstances to avoid taking actions that would cause foreseeable harms to Plaintiff.

86.     Valley Forge breached that duty by, among other things:

(a)     failing to ensure that Unity was properly licensed under state law, had adequate policies/procedures/practices/systems in place, and had adequate personnel in place to effectively carry out its business as a Sober Home;

(b)     failing to advise, discuss with, or in any way identify for Unity Plaintiff's medical/prescription needs upon arrival at the Sober Home and failing to ensure that Unity acknowledge and/or accepted responsibility for managing those needs;

(c)     failing to advise Plaintiff about alternative sober home and other residential placements;

(d)     undertaking to facilitate, recommend, and/or orchestrate Plaintiff's placement at Unity when it knew or should have known that Unity was unlicensed, unsafe, and/or otherwise incapable of providing a stable and healthy residence to Plaintiff;

(e)     transporting Plaintiff to a residential placement at the Property when it knew or should have known that Unity was unlicensed, unsafe, and/or otherwise incapable of providing a stable and healthy residence to Plaintiff;

(f)     failing to formulate, adopt, and enforce adequate rules, policies, and/or procedures to ensure that patients are not transferred to unsafe and unlicensed Sober Home facilities such as Unity;

13

Case ID: 230601052

(g)  failing to select, retain, supervise, and oversee employees, servants, and/or agents competent to carry out the aftercare and/or residential placement of patients such as Plaintiff; and

(h)  failing to ensure that Unity and the Property were in compliance with all requirements of the Pottstown Municipal Code, Chapter 11, regarding residential rental units.

87.  Unity held itself out to the public as a Sober Home and purports to offer "a safe and structured environment" to residents recovering from addiction.

88.  Unity owed a duty to Plaintiff to exercise the care of a reasonably prudent business in the same or similar circumstances to avoid taking actions that would cause foreseeable harms to Plaintiff.

89.  Unity breached that duty by, among other things:

(a)  failing to obtain licensure from the Department prior to accepting Plaintiff as a resident at the its Sober Home;

(b)  failing to formulate, adopt, and enforce adequate rules, policies, and procedures to ensure the safety of residents at the Property, including rules, policies and/or procedures to ensure that prescription medications were appropriately monitored, stored, dispensed and/or administered to residents such as Plaintiff;

(c)  failing to select, retain, supervise, and oversee employees, servants, and/or agents competent to ensure that residents such as Plaintiff were provided with a safe environment to continue their addiction rehabilitation and/or aftercare;

14

(d) failing to employ licensed professionals such as physicians, nurses, and/or pharmacists, to safely and competently monitor, address, and care for the medical and prescription needs of residents such as Plaintiff;

(e) improperly confiscating, dispensing, and administering the inappropriate dosage and/or quantity of prescription medication to Plaintiff;

(f) selectively creating and enforcing purported 'policies' and manufacturing false pretenses to charge Plaintiff with violations thereof;

(g) failing to ensure that Unity and the Property were in compliance with all requirements of the Pottstown Municipal Code, Chapter 11, regarding residential rental units; and

(h) carelessly, recklessly, and thoughtlessly failing to manage the day-to-day activities of the Property.

90. Unity is also guilty of conduct amounting to *negligence per se* because its misconduct in confiscating, storing, dispensing, administering, and/or delivering Plaintiff's prescription medication constitutes the unauthorized practice of medicine and/or the unauthorized practice of pharmacy, which are expressly prohibited by Pennsylvania Statutes and the Pennsylvania Code. *See, e.g.*, 63 P.S. § 390-1 *et seq.* § 422.1 *et seq.*; 49 Pa. Code § 27.12(a). All such Statutes and Codes were adopted to protect the health and welfare that subclass of society that, like Plaintiff, seeks medical and medicinal care from professionals who they expect to be trained, competent, and qualified to offer such services. Unity's conduct, by and through its employees, clearly violates these Statutes and Codes and is the cause of Plaintiff's injuries. Such conduct is therefore *per se* negligent.

91. Jayawardena was at all material times the owner and landlord of the Property.

15

92.     Jayawardena had actual knowledge, or should have known, that Unity was using the Property as a Sober Home.

93.     Upon information and belief, Jayawardena knew or should have known that Unity was illegally, improperly, and/or unsafely operating a Sober Home at the Property, and as such, that residents such as Plaintiff were at risk of imminent and serious harm.

94.     Nevertheless, Jayawardena did not take sufficient action (if any) to stop Unity from misusing the Property in such a foreseeably dangerous manner, nor did Jayawardena notify Plaintiff of the dangers arising out of Unity's use of the Property.

95.     Additionally, as the owner of the Property, Jayawardena had a duty to act as a reasonable property owner in the same or similar circumstances to protect residents such as Plaintiff against unreasonable risk of known harms arising out the condition and use of the Property.

96.     Jayawardena breached this duty, by among other things:

(i)     selecting Unity and/or Re/Max as its agents to oversee and operate the Premises on its behalf;

(j)     failing to select, retain, supervise, and oversee employees, servants, and/or agents competent to ensure that the Property would not be used in an improper, illegal, or unsafe manner;

(k)     failing to require and ensure that Unity and the Property were in compliance with all requirements of the Pottstown Municipal Code, Chapter 11, regarding residential rental units;

(l)     failing to monitor Unity's and/or Re/Max's management of the Property and take necessary steps to minimize the risk of harm posed caused thereby,

Case ID: 230601052

including the failure to take reasonable steps to stop Unity and Re/Max from conducting unlawful and unlicensed operations at the Property; and

(m)   failing to comply with all requirements of the Pottstown Municipal Code, Chapter 11, regarding residential rental units.

97.   As the property manager and agent of the Property, ReMax knew or should have known that Unity was illegally, improperly, and/or unsafely operating a Sober Home at the Property, and as such, that residents such as Plaintiff were at risk of imminent and serious harm.

98.   Nevertheless, Re/Max did not take sufficient action (if any) to stop Unity from misusing the Property in such a foreseeably dangerous manner, nor did Re/Max notify Plaintiff, Unity, or Jayawardena of the dangers arising out of Unity's use of the Property.

99.   Additionally, as the property manager and agent of the Property, Re/Max had a duty to act as a reasonable property manager in the same or similar circumstances to protect residents such as Plaintiff against unreasonable risk of harms arising out the condition and use of the Property.

100.   Re/Max breached this duty, by among other things:

(n)   Carelessly, recklessly, and thoughtlessly failing to manage the day-to-day activities of the Property;

(o)   failing to select, retain, supervise, and oversee employees, servants, and/or agents competent to ensure that the Property would not be used in an improper, illegal, or unsafe manner;

(p)   failing to require and ensure that Unity and the Property were in compliance with all requirements of the Pottstown Municipal Code, Chapter 11, regarding residential rental units;

17

Case ID: 230601052

      (q)     failing to monitor Unity and take necessary steps to minimize the risk of harm posed caused thereby, including the failure to take reasonable steps to stop Unity from conducting unlawful and unlicensed operations at the Property; and

      (r)     failing to comply with all requirements of the Pottstown Municipal Code, Chapter 11, regarding residential rental units

101.    As a direct and proximate result of Defendant's breaches of the aforementioned duties, Plaintiff suffered damages including, without limitation, physical injuries, pain, and suffering, extreme emotional distress, stress, anxiety, loss of sleep, nightmares, loss of enjoyment of life's pleasures, a complete loss of trust and confidence in the so-called "rehabilitative" services which are necessary for his long-term recovery from addiction, and other non-pecuniary losses including the erosion of his family relationships.

102.    The Defendants each had sufficient information at the time of committing the aforesaid acts that would have caused a similarly situated reasonable person/entity to have realized its conduct created a risk of harm to person or property, and that such risk is greater than which is necessary to make their conduct negligent.  In particular, each Defendant, at a minimum, knew or should have known that its misconduct was undertaken in violation of state statutory law and both state and local codes, and therefore, was malicious, willful, wanton, and/or undertaken with a reckless disregard for the rights of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter Judgment in his favor, in amount to be determined at trial in excess of $50,000, including an award of actual damages for physical injuries, pain, and suffering, extreme emotional distress, stress, anxiety, loss of sleep, nightmares, loss of enjoyment of life's pleasures, a complete loss of trust and confidence in the so-

Case ID: 230601052

called "rehabilitative" services which are necessary for his long-term recovery from addiction, other non-pecuniary losses including the erosion of his family relationships, *punitive damages*, consequential damages, reasonable attorneys' fees, costs, and other such relief as the Court deems equitable and just.

## COUNT II
## NEGLIGENCE (MEDICAL MALPRACTICE)
### *(Plaintiff v. Valley Forge)*

103.    Plaintiff incorporates all allegations in the preceding paragraphs as if set forth and alleged fully herein.

104.    Valley Forge is a medical facility licensed to operate in the Commonwealth of Pennsylvania.

105.    At all relevant times Valley Forge acted through its employees, contractors, and or agents and is therefore liable for the acts and omissions of its employees, contractors, and or agents under theories of *respondeat superior*, vicarious liability, master-servant, agency, and right of control, all of which are expressly invoked herein against Valley Forge.

106.    Valley Forge has partnered with several Sober Homes, including Unity, to place its patients in such Sober Homes for aftercare services.

107.    In or around August 2022, in conjunction with Plaintiff's discharge, Valley Forge recommended, orchestrated and facilitated the placement of Plaintiff at the Property under the care of Unity as part of Plaintiff's aftercare plans created by Valley Forge.

108.    Valley Forge transported Plaintiff from its facility to Unity at the Property.

109.    Valley Forge owed a duty to Plaintiff to exercise the level of care that a reasonably skilled and competent medical services provider would have exercised in the same or similar conditions, and in particular, in developing a reasonable, safe, and sound aftercare program.

19

Case ID: 230601052

110.    By virtue of its misconduct as described more fully at length in the preceding paragraphs, Valley Forge's conduct in providing professional medical services to Plaintiff fell below the standard of care owed to Plaintiff.

111.    As a direct and proximate result of Defendant's breaches of the aforementioned duties, Plaintiff suffered damages including, without limitation, physical injuries, pain, and suffering, extreme emotional distress, stress, anxiety, loss of sleep, nightmares, loss of enjoyment of life's pleasures, a complete loss of trust and confidence in the so-called "rehabilitative" services which are necessary for his long-term recovery from addiction, and other non-pecuniary losses including the erosion of his family relationships.

**WHEREFORE**, Plaintiff respectfully requests the Court enter Judgment in his favor, in amount to be determined at trial in excess of $50,000, including an award of actual damages for physical injuries, pain, and suffering, extreme emotional distress, stress, anxiety, loss of sleep, nightmares, loss of enjoyment of life's pleasures, a complete loss of trust and confidence in the so-called "rehabilitative" services, which are necessary for his long-term recovery from addiction, other non-pecuniary losses including the erosion of his family relationships, consequential damages, reasonable attorneys' fees, costs, and other such relief as the Court deems equitable and just. Valley Forge transported Plaintiff from its facility to Unity at 236 N. Evans Street.

## COUNT III
## VIOLATION OF THE UNFAIR TRADE PRACTICES AND CONSUMER PROTECTION LAW, 73 P.S. § 201-1 *et seq.*
### *(Plaintiff v. Unity)*

112.    Plaintiff incorporates all allegations in the preceding paragraphs as if set forth and alleged fully herein.

Case ID: 230601052

113.    The Pennsylvania Unfair Trade Practices and Consumer Protection Law ("UTPCPL") prohibits "passing off goods or services as those of another," "[r]epresenting that goods or services have . . . approval, characteristics . . . uses [or] benefits that [they do] not have," "[r]epresenting that a person has approval [or] status . . . that he does not have," "[e]gaging in . . . fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. § 201-2(4).

114.    The UTPCPL applies to real estate rental transactions.

115.    Plaintiff was a residential tenant at the Property, and he rented such residence for his personal use.

116.    Unity violated the UTPCPL by:

    a.    Making false representations regarding the nature and status of Unity as a legitimate Sober Home and/or landlord in an attempt to obtain payments from Plaintiff that were not owed;

    b.    Making false representations about Plaintiff's purported violation of "policies" in an attempt to evict Plaintiff;

    c.    Refusing to return Plaintiff's security deposit after Plaintiff had vacated the Property;

    d.    Deceptively failing to comply with the requirements of the PMC and intentionally concealing those facts from Plaintiff;

    e.    Wrongfully evicting Plaintiff in violation of Pennsylvania law and without judicial process; and

    f.    Keeping Plaintiff's "security deposit" and prepaid "rent" in violation of Pennsylvania law.

Case ID: 230601052

117.    Plaintiff reasonably relied on the implied and actual misrepresentations and deceptive conduct of Unity.

118.    As a direct and proximate result of the misrepresentations and deceptive conduct of Unity, Plaintiff suffered ascertainable loss, including approximately in $1,000 in payments made but not returned to Plaintiff, plus other losses recognizable at law.

**WHEREFORE**, Plaintiff respectfully requests the Court enter Judgment in his favor, in amount to be determined at trial, including an award of:

      a.   Actual damages;

      b.   Treble damages, pursuant to 73 P.S. § 201-9.2;

      c.   costs, reasonable attorneys' fees, witness fees, and other litigation costs, as authorized by 73 P.S. § 201-9.2;

      d.   pre- and post-judgment interest; and

      e.   such other relief as the Court deems equitable and just.

## COUNT IV
## WRONGFUL EVICTION
### *(Plaintiff v. Jayawardena, Unity, and Re/Max)*

119.    Plaintiff incorporates all allegations in the preceding paragraphs as if set forth and alleged fully herein.

120.    Jayawardena, Unity, and Re/Max were the landlord and/or landlord's agents that had oversight and management responsibilities for the Property and purported to collect "rent" from Plaintiff in exchange for a room at the Property.

121.    Plaintiff paid a security deposit and prepaid rent to Unity covering weekly rent through at least October 2022.

22

122.    Unity abruptly forced Plaintiff to vacate the Property late in the evening on or about September 18, 2022.

123.    Jayawardena, Unity, and Re/Max did not issue a Notice to Quit in violation of 68 P.S. § 250.501.

124.    Jayawardena, Unity, and Re/Max did not seek a judgment or writ of possession to evict Plaintiff, but instead resorted to illegal self-help.

125.    As a direct and proximate result of Jayawardena, Unity, and Re/Max's misconduct described above, Plaintiff suffered damages including, without limitation, loss of tangible property, emotional distress, stress, anxiety, loss of sleep, nightmares, loss of enjoyment of life's pleasures, a complete loss of trust and confidence in the so-called "rehabilitative" services which are necessary for his long-term recovery from addiction, and other non-pecuniary losses including the erosion of his family relationships.

126.    Jayawardena, Unity, and Re/Max each had sufficient information at the time of committing the aforesaid acts that would have caused a similarly situated reasonable person/entity to have realized its conduct created a risk of harm to person or property, and that such risk is greater than which is necessary to make their conduct negligent.  In particular, each of Jayawardena, Unity, and Re/Max, at a minimum, knew or should have known that its misconduct was undertaken in violation of state law, and therefore, was malicious, willful, wanton, and/or undertaken with a reckless disregard for the rights of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests the Court enter Judgment in his favor, in amount to be determined at trial in excess of $50,000, including an award of actual damages including loss of property, emotional distress, stress, anxiety, loss of sleep, nightmares, loss of enjoyment of life's pleasures, a complete loss of trust and confidence in the so-called

23

"rehabilitative" services, which are necessary for his long-term recovery from addiction, other non-pecuniary losses including the erosion of his family relationships, ***punitive damages***, consequential damages, reasonable attorneys' fees, costs, and other such relief as the Court deems equitable and just.

**COUNT V**
**RETURN OF SECURITY, 68 P.S. § 250.511, *et seq*.**
***(Plaintiff v. Jayawardena, Unity and Re/Max)***

127.    Plaintiff incorporates all allegations in the preceding paragraphs as if set forth and alleged fully herein.

128.    Jayawardena, Unity, and Re/Max were the landlord and/or landlord's agents that had oversight and management responsibilities for the Property and purported to collect "rent" from Plaintiff in exchange for a room at the Property.

129.    Unity collected $75.00 as a security deposit at the time of Plaintiff's intake at the Property.

130.    Jayawardena, Unity, and Re/Max unlawfully evicted Plaintiff in the middle of the night and thereby purported to terminate any lease agreement in existence.

131.    Jayawardena, Unity, and Re/Max has failed to return, within 30 days of the termination of the lease and/or the surrender of the Property, either (a) the full security deposit of $75.00, or (b) a list of alleged damages or bases for withholding return of the security deposit, together with payment of the difference between the Security Amount and the amount withheld, in violation of 68 P.S. § 250.512(a).

132.    Because Jayawardena, Unity, and Re/Max unlawfully and forcefully evicted Plaintiff from the Property without judicial process and in the middle of the night, they each have

24

unclean hands and are equitably estopped from invoking any defense to repayment of the security deposit by virtue of Plaintiff's failure to provide a forwarding address for such funds.

**WHEREFORE**, Plaintiff respectfully requests the Court enter Judgment in his favor, in amount to be determined at trial, including the following:

a.     Actual damages;

b.     double damages, pursuant to 68 P.S. § 250.512(c);

c.     pre- and post-judgment interest; and

d.     such other relief as the Court deems equitable and just.

**COUNT VI**
**INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS**
***(Plaintiff v. Unity)***

133.   Plaintiff incorporates all allegations in the preceding paragraphs as if set forth and alleged fully herein.

134.   Late in the evening on September 18, 2022, mere weeks after Plaintiff became unconscious and was subjected to emergency and life-saving treatment needed because of Unity's mishandling of Plaintiff's medication by non-medically trained employees, and after being subjected to relentless harassment and mental abuse by Unity employees, Unity suddenly told Plaintiff that he would need to leave Property immediately in the middle of the night.

135.   Plaintiff was given minutes to gather whatever personal belongings he could carry and leave the Property.  Unity tried to force Plaintiff to sign paperwork (likely a release of liability or purported admission) prior to kicking Plaintiff out of the Property.  Plaintiff was given no means of transportation and no alternative housing, but instead intentionally sent onto the streets of Pottstown in the middle of the night along with only those things he could physically carry.

136.   As a result of the Defendants' misconduct described above, Plaintiff has suffered

25

pain and suffering, extreme emotional distress, anxiety, depression, loss of sleep, and a complete loss of trust and confidence in the so-called "rehabilitative" services which are necessary for his long-term recovery from addiction.

137.    The behavior of Unity and its employees was extreme and outrageous, and done intentionally and/or recklessly such that it caused Plaintiff severe emotional distress.  No person should ever be subjected to the egregious misconduct of Unity, especially not individuals such as Plaintiff who are recovering from addiction – the very purported reason for Unity's existence in the first instance.  There can be no doubt that Unity appreciated the extreme risk associated with its destructive conduct and nevertheless acted in a self-serving and abhorrent manner in complete disregard of the rights and physical and emotional health and safety of Plaintiff.

**WHEREFORE**, Plaintiff respectfully requests the Court enter Judgment in his favor, in amount to be determined at trial for his extreme emotional distress suffered as a direct result of the Unity's outrageous and trauma-inducing misconduct, including an award of ***punitive*** damages.

<u>**COUNT VII**</u>
<u>**CONVERSION**</u>
*(Plaintiff v. Jayawardena & Unity)*

138.    Plaintiff incorporates all allegations in the preceding paragraphs as if set forth and alleged fully herein.

139.    Upon abruptly evicting Plaintiff in the middle of the night, Unity, acting on behalf of Jayawardena, failed to provide Plaintiff reasonable time to collect his belongings from the sober living facility, thereby intentionally depriving Plaintiff of his personal property, including clothing and other personal effects valued at more than $1,000.00.

140.    Plaintiff did not consent to the unlawful eviction and did not consent to Unity or Jayawardena using, keeping, or possessing Plaintiff's personal property.

26

141.    Unity and/or Jayawardena kept the personal property that Plaintiff was forced to leave behind at the Property.

142.    As such, Unity and/or Jayawardena unreasonably withheld and deprived Plaintiff of the possession and use of that property without his consent and without lawful justification.

**WHEREFORE**, Plaintiff respectfully requests that the Court enter Judgment in his favor, in amount to be determined at trial.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully request that this Court enter an Order granting Judgment to Plaintiff and against Defendants, and awarding the following relief:

a.  Actual damages;

b.  Consequential damages;

c.  Punitive damages;

d.  Enhanced and/or treble damages;

e.  Damages for physical harms, pain, suffering, distress, severe emotional harm and loss of the enjoyment of life;

f.  Costs, reasonable attorneys' fees, witness fees, and other litigation costs;

g.  Pre- and post-judgment interest;

h.  Delay damages; and

i.  Such other relief as the Court deems equitable and just.

## JURY DEMAND

Plaintiffs demand a trial by jury on all issues so triable.

**REED SMITH LLP**

*/s/Mark W. Fidanza*
Mark W. Fidanza, Esquire (320930)
Christina G. Bowen, Esquire (331905)

27

Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, PA 19103-7301
(215) 851-8100
Fax: (215) 851-1420

*Counsel for Plaintiff John McCready*

Dated:    June 12, 2023

Case ID: 230601052

## VERIFICATION

I, John McCready, verify that I have reviewed the foregoing Complaint and the averments of fact are true and correct to the best of my knowledge, information, and belief. I understand that false statements herein are made subject to penalty of 18 Pa. C.S.A. § 4904 relating to unsworn falsification to authorities.

6/11/2023
Date

John McCready

**REED SMITH LLP**
Mark W. Fidanza, Esquire (ID #320930)
Christina G. Bowen, Esquire (ID #331905)
Three Logan Square
1717 Arch Street, Suite 3100
Philadelphia, PA 19103-7301
(215) 851-8100
Fax: (215) 851-1420
*Counsel for Plaintiff John McCready*

Filed and Attested by the
Office of Judicial Records
12 JUN 2023 11:22 am
A. TAMATO

| | | |
|---|---|---|
| JOHN MCCREADY, | : | COURT OF COMMON PLEAS |
| Plaintiff, | : | PHILADELPHIA COUNTY |
| | : | CIVIL DIVISION |
| v. | : | |
| | : | |
| UNITY SOBER LIVING HOMES, LLC, | : | CASE NO.: 230601052 |
| et al., | : | |
| Defendants. | : | |
| | : | |

### CERTIFICATE OF MERIT
### AS TO
### DEFENDANT VALLEY FORGE MEDICAL CENTER AND HOSPITAL

I, Mark W. Fidanza, Esquire, certify pursuant to Pa. R.C.P. 1042.3(a)(1) and (a)(2) that:

(1) An appropriate licensed professional has supplied a written statement to the undersigned that there exists a reasonable probability that the care, skill or knowledge exercised or exhibited by Defendant Valley Forge Medical Center and Hospital ("Valley Forge"), in the practice and/or work that is the subject of the complaint, fell outside acceptable professional standards and that such conduct was a cause in bringing about the harm alleged by Plaintiff.

### AND

(2) The claim that Valley Forge deviated from an acceptable professional standard is based solely on allegations that other licensed professionals for whom this defendant is responsible deviated from an acceptable professional standard and an appropriate licensed professional has

supplied a written statement to the undersigned that there is a basis to conclude that the care, skill

or knowledge exercised or exhibited by the other licensed professionals in the treatment, practice

or work that is the subject of the complaint, fell outside acceptable professional standards and that

such conduct was a cause in bringing about the harm.

Respectfully Submitted,

**REED SMITH LLP**

<u>  /s/Mark W. Fidanza  </u>
Mark W. Fidanza, Esquire (320930)
Christina G. Bowen, Esquire (331905)
Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, PA 19103-7301
(215) 851-8100
Fax: (215) 851-1420

*Counsel for Plaintiff John McCready*

Dated:   June 12, 2023

2

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing certificate of merit as to Defendant Valley Forge Medical Center and Hospital was sent for filing through the Court's electronic filing system on the date identified below. A true and correct copy of the above will also be served upon Defendants as indicated below:

By Personal Service:

CHAMINDA R. JAYAWARDENA
241 W. Wyoming Ave
Philadelphia, PA 19139

By Deputized Sheriff Service:

UNITY SOBER LIVING HOMES, LLC
448 Walnut Street
Pottstown, PA 19464

VALLEY FORGE MEDICAL CENTER AND HOSPITAL
1033 W. Germantown Pike
Norristown, PA 19403

RE/MAX ACHIEVERS
1425 S. Collegeville Road
Collegeville, PA 19426

REED SMITH LLP

_/s/Mark W. Fidanza_
Mark W. Fidanza, Esquire (320930)
Christina G. Bowen, Esquire (331905)
Three Logan Square, Suite 3100
1717 Arch Street
Philadelphia, PA 19103-7301
(215) 851-8100
Fax: (215) 851-1420

*Counsel for Plaintiff John McCready*

Dated:   June 12, 2023

3